UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALVALOIS ROBINSON,

   Plaintiff,        CIVIL ACTION NO. 07-12751

 v.             DISTRICT JUDGE DAVID M. LAWSON

COMMISSIONER OF      MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

  This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits and supplementary security income (SSI). Plaintiff alleged that she became disabled as of December 4, 2003, as a result of hypertension, asthma/COPD, posterior lipoma at L1-2, disc herniation at L3-4 with degenerative narrowing, and L4-5 annular tear and disc herniation, as well as uterine fibroids and alcohol abuse. Plaintiff is insured for Title II benefits through December, 2008. She was born in August, 1958, and attended school through the 9th grade (a limited education). The defendant found that she had severe impairments but was capable of performing medium work that existed in significant numbers and accordingly, was not disabled. Plaintiff claims that this finding is not supported by substantial evidence. Defendant contends otherwise. For the reasons discussed in this report, it is recommended that plaintiff's motion be granted in part and the matter remanded to the agency pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this recommendation.

  The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Plaintiff's work record shows that she worked in corporate personnel services, as a home health provider, in housekeeping at the Somerset Inn, and as a resident aide at Alterra. (Tr. 65) She reports that she injured her back at work in August, 2003, while lifting a patient at Alterra. (Tr. 110) She had only been working there about two months. (Tr. 112) Plaintiff had some epidural injections with Dr. Belfie for her back pain. (Tr. 110) In October, 2003, she underwent an MRI of the lumbar spine after reporting back pain for a month and a half. This revealed discrete disc herniation at L1-2 and L2-3, a small broad base disc herniation at L3-4, and diffuse

posterior bulging at L5-S1. There was mild degenerative spondylosis of the visualized thoracic spine. (Tr. 90) There was also a uterine mass and she was advised to see her family doctor or gynecologist as soon as possible to rule out cancer. (Tr. 91)[1] In November, 2003, plaintiff's radiographic study showed a normal heart and lung. (Tr. 103) In December, 2003, plaintiff was seen by Dr. Rengachary, M.D. Plaintiff had been returned to work by her previous doctor but stated she could not go back due to persistent pain. (Tr. 112) She reported heartburn, difficulty walking, depression, trouble sleeping, sinus problems, and bronchitis. She had a moderate degree of paraspinal muscle spasm. The examiner suspected that the cause of her back pain was the annular tear at L4-5. Conservative care with injections was to be the plan. (Tr. 113)

A residual functional capacity assessment performed in March, 2004, indicated that plaintiff could lift 50 pounds occasionally, 25 pounds frequently, and stand or sit six hours in an eight-hour day. She was unlimited in her ability to push and pull. (Tr. 116-117)

Plaintiff was examined for psychiatric disability in April, 2004. She reported depression and a back injury in August, 2003. Her sleep is disturbed and her appetite decreased since the injury at work. Plaintiff is single with four children. She has acid reflux, hypertension, chronic bronchitis and was taking Lexapro. She has not been in drug or alcohol treatment but has a history of alcohol abuse since she was 17. She drinks 30 cans of beer three or four times a week and her last use was two days before. She has no hobbies and lives with her daughter. (Tr. 125) The diagnosis was adjustment disorder with depressed mood, alcohol abuse, and her GAF was 55. (Tr. 127) The impairment was noted to be "not severe." (Tr. 128)

Plaintiff has been treated at the Mercy Primary Care Center by Dr. Pamela Williams for sinus problems, ear pain, congestion, toothache, COPD, and chronic back pain. (Progress notes,

---

[1] Included in the transcript and referenced in plaintiff's brief is another MRI of the lumbar spine which showed similar results. (Tr. 92-93) That however relates to a "Betty Jones" age 55, and not plaintiff. It seems to have been included in error.

- 3 -

Tr. 181-252) Included in the progress notes are reports from Basha Diagnostics which show that in August, 2005, plaintiff had below normal bone density and possible osteoporosis (Tr. 203) and her CT of the brain from July, 2005, was negative. (Tr. 207) She had a fibroid tumor in her uterus per the Ob/Gyn doctor. (Tr. 234) Her breathing results in September, 2004, show borderline obstruction and that she was still smoking. (Tr. 235)

      Plaintiff was examined for disability by Dr. Cynthia Shelby-Lane in November, 2006. Plaintiff reported that following her work injury in 2000, she had six months of physical therapy. When she was injured again in 2003, she had another four months of physical therapy. She has chronic back pain aggravated by standing for prolonged periods of time, stooping, and squatting. She also has chronic leg pain. Her EMG and nerve conduction study of her extremities done in 2006 were normal. Upon examination, she was 5 ft 2 in and weighed 167 pounds. Her blood pressure was 126/88. Her pedal pulses were 2+ bilaterally. There was no obvious spinal deformity and gait and stance were normal. The impression was chronic back pain secondary to two back injuries; history of mild depression and adjustment disorder based on the one examination. Plaintiff has never been treated for any mental impairment, and her hypertension is controlled with medication. (Tr. 257) X-rays of her lumbar spine in November, 2006, at Weisenthal Diagnostics, showed normal osseous structure, well preserved disc spaces.[2] There was no evidence of fracture, osteolytic or osteoblastic activity. (Tr. 259) Range of motion studies were normal as well. (Tr. 260-261) All of her abilities to stand, squat, stoop, carry, and otherwise function from an orthopaedic, neuralgia, and physiatrics viewpoint were normal. (Tr. 262) The medical source statement of ability to do physical work indicated that she could lift and carry ten pounds frequently, stand less than two hours in an eight-hour work day, sit six

---

[2]These would appear to be inconsistent with the report from Basha Diagnostics. (Tr. 203)

hours, alternating sitting and standing. Pushing and pulling is limited by pain. She could climb, balance, kneel, crouch, crawl, and stoop occasionally. (Tr. 263-265)

Dr. Williams reports in November, 2006, that plaintiff is her patient and has sciatica secondary to lumbar radiculopathy and a fibroid uterus.[3] Plaintiff can lift five to ten pounds occasionally, stand not more than 15 minutes, and alternate between sitting and standing. Plaintiff takes Tramadol[4] for pain which makes her sleepy and requires her to lie down after taking it. (Tr. 270)

At the hearing, plaintiff testified that she could not work due to constant pain in her low back. (Tr. 278) Plaintiff stated that she took blood pressure medication and Vicodin (which Dr. Williams later switched to Atenolol). The ALJ indicated that he could not find such a medication in the list and was not familiar with its being prescribed for plaintiff's condition. Plaintiff then said that maybe she was not pronouncing it correctly and did not know what she was taking. Plaintiff states she needs to change positions every 10 or 15 minutes. She filed a worker's compensation case after the injury in 2003 and that was settled for $10,000 or $11,000. She gets food stamps from the FIA and lives with her 28-year old daughter. She occasionally drives to the store, gas station, and doctor's office. (Tr. 283) Plaintiff reports staying in bed a couple days a week due to pain. (Tr. 285) Plaintiff states she uses an Atrovent inhaler for her chronic bronchitis and wheezing. (Tr. 287)

A vocational expert also testified at the hearing. She identified plaintiff's past work as an aide at Alterra as medium and at the low end of semi-skilled. Her home health aide position is similar and is medium, semi-skilled work. Plaintiff's position was a cleaner/housekeeper for the

---

[3] Plaintiff notes this is a "free clinic." (Tr. 291)

[4] Tramadol is sold under the brand name Ultram. It is used for the management of moderate to moderately severe pain. MedicineNet.com. It is generally well tolerated and side effects are transient.

motel where she stated that the most she lifted was ten pounds is comparable to a maid and is generally considered light and unskilled. Based upon what plaintiff said she did, her work would be consistent with the DOT title of light and unskilled. (Tr. 296) Plaintiff also worked a temporary position in an auto plant. That position would be "general laborer" and is probably closest to "hand packager" which involves a variety of duties and is unskilled, medium work. There was some other work but the vocational expert did not believe it lasted long enough to be considered substantial gainful activity. (Tr. 297) If plaintiff could perform medium work as identified by the state RFC assessment, she could return to all or her past relevant work. If she could do unskilled sedentary, medium, or light work with only occasional balancing, crawling, climbing, and stooping, plaintiff's past work in the housekeeper position would be included at the light level (11,000 positions in the metropolitan area) and if she could do medium work, the hand packer position would be included (30,000 jobs). If plaintiff could do only sedentary, unskilled jobs then none of her past work would be included but there would be other jobs such as inspector, tester, and assembly work (3,000 jobs limiting them to the postural limitations.) (Tr. 299) If she were further limited environmentally because of the bronchitis and asthma, then the cleaner/housekeeper job and the sedentary unskilled jobs would not be impacted but there would be a 50 percent erosion in the 30,000 medium hand packer jobs, limiting the jobs to 15,000. (Tr. 301) If she needed to lie down two to three hours during the workday, competitive employment would be precluded. Id. In addition, if she had to change positions every 15 minutes, that requirement would be incompatible with the unskilled sedentary job base.

**Analysis**

Plaintiff raises two arguments related to her claim. She submits that the record does not support an RFC of medium work and the ALJ did not adequately assess her pain, limitations, and credibility. With respect to plaintiff's claims that the ALJ did not properly evaluate her complaints of disabling pain, the ALJ found they were not credible. Pain caused by an

impairment can be disabling, but each individual has a different tolerance of pain.  Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984).  Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff.  Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987).  Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly.  Villarreal, 818 F.2d at 463 and 464.

The ALJ's finding that plaintiff's complaints of disabling pain were not credible is supported by substantial evidence.  Plaintiff's behavior exaggerates her symptomatolgy and is disproportionate to the findings of the doctors.  Plaintiff appears to want the court to rely on the fact that the social security office noted that plaintiff had difficulty sitting, standing, and walking, used a cane and appeared to be in pain.  The ALJ also noted the same. (Tr. 29)  The court does not see this as a positive reflection on plaintiff.  Nowhere in the medical records is it shown that the examining or treating physicians have indicated a need for an assistive device.  They have reported plaintiff's gait and stance as normal.  No evidence supports the behavior of inability to walk.  EMG and nerve conduction studies of plaintiff's extremities are normal.  Plaintiff's behavior during in-person contact with social security personnel seems more a sign of her efforts to paint her condition worse than it is and buttresses the ALJ's finding that plaintiff was not credible.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability.  Subsequently, the Social Security Act was modified to incorporate the standard.  20 C.F.R. § 404.1529 (1995).  A finding of disability cannot be based solely on subjective allegations of pain.  There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the

objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

Here plaintiff alleges that she cannot do medium work because of her pain. Medium work is defined as:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §404.1567(C).

A full range of medium work includes standing and walking, off and on, for six hours of an eight-hour day. Usually it requires frequent bending and stooping as well. 20 C.F.R. § 404.1567(c), SSR 83-14. In this case, plaintiff has documented injuries which resulted in or contributed to impairments in her lumbar area demonstrated by objective evidence. An MRI in October, 2003, showed an annular tear at L4-5, with likely disc derangement, ongoing disc disease at L3-4 and L4-5 with bilateral facet degenerative changes and degenerative changes visible in the thoracic spine. These have been said by her treating and examining physicians to be the source of her back pain. She has received generally conservative care, but has had epidural steroidal injections as well as non-steroidal injections. The physicians who examined her–both treating and consulting doctors–concluded that she is not able to do medium work. Physicians who examine plaintiff only one time, even at plaintiff's request, are not treating physicians. McSwain v. Secretary of HHS, 814 F.2d 617, 619 (11th Cir. 1987). Although the consultative examining physician's opinion is entitled to less weight than the treating physician, both concluded that plaintiff could not do medium work. The ALJ relied on the RFC determination of the state reviewer who did not examine her. This was error.

Plaintiff also argues that the treating physician's testimony was not given the appropriate weight. It is true that great deference is to be given to medical opinions and diagnoses of treating physicians. Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). It is also true that complete deference is given when said opinions are uncontradicted. However, in both instances, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such opinions. Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. Warner v. Commissioner of Social Security, 375 F.3d 387 (2004) (citing Harris v. Heckler, 756 F.2d at 435). Here, plaintiff has some objective evidence in the form of x-rays that show abnormalities and loss of bone density. It is unclear how these x-rays are consistent with later x-rays showing well preserved disc spaces and otherwise normal findings. Further, on examination, she had muscle spasm and takes injections and medication indicative of a fair amount of pain. Even with the "normal" x-rays, the physician limited her to light or sedentary work.

Plaintiff also contends that her non-exertional limitations should have been included in the hypothetical. The ALJ did include the non-exertional limitations of environmental restrictions, which impacted only the number of medium exertional level jobs. He did not include the claimed mental impairment of depression. There was no error. The medical record shows it to be non-severe and thus not necessary to be included. Plaintiff was seen by a mental health professional only in connection with her application for disability. The examiner concluded that the impairment was not severe. Plaintiff contends that the moderate limitations noted by the examiner should have been included. Like the examiner who saw her for her back

pain, this examiner made a determination that is entitled to be considered as a whole. Plaintiff has never treated with anyone for this claimed depression. Although at one time she received some medication, this had not been prescribed for her for quite some time. In addition, the claimed impairment is based solely on her subjective self-reporting and for the reasons discussed above, this reporting is suspect. Plaintiff's work history does not show a strong motivation to work. Her alcohol abuse (30 beers two or three times a week) undercuts any claim that absent the effect of alcohol or possible medication abuse (Vicodin etc) and the impact of her disability application, she would have a severe mental impairment. Thus, there was no error in not including the non-exertional limitations in the hypothetical to the vocational expert.

The question becomes then, if plaintiff cannot perform medium work, is she entitled to benefits? The government, in a footnote, argues that the vocational expert identified sedentary and light work that plaintiff could do. Thus, the government argues that "there is no credible evidence that plaintiff cannot, at the very least, perform sedentary work. Under these circumstances, remand would serve no useful purpose." First, this misperceives the five step analysis because if plaintiff cannot perform her past relevant work, then the burden shifts to the Commissioner to show that there is other work that she could do. The argument also misperceives the role of the court. It is not the job of the court to weigh evidence, or make findings of fact. The court's role is to determine if the decision below is supported by substantial evidence. This decision is not. The medical evidence does not support a finding that plaintiff could do medium work.

To the extent that the argument could be read as one for harmless error, it is not clearly made nor conceded. The plaintiff, and the public, are entitled to clear findings, well-articulated opinions, and fair advocacy from the government. It is not the role of the court to reach out and make arguments for the government.

Thus, it is recommended that the matter be remanded to the agency for a review of plaintiff's medical record, including redetermination of her RFC, whether she is actually on medication that causes her to be drowsy and whether this would prevent the performance of substantial gainful activity, and whether there is any medical basis for the 15 minute position change alleged by her to preclude employment, or whether the need to periodically alternate between standing and sitting as stated by the consultive examiner (Tr. 265) would permit plaintiff to perform a significant number of jobs.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                        s/Virginia M. Morgan
                                        Virginia M. Morgan
                                        United States Magistrate Judge

Dated: March 7, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 7, 2008.

                                        s/Jane Johnson
                                        Case Manager to
                                        Magistrate Judge Virginia M. Morgan